**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KEANA BAUTISTA,** | : | |
| **Plaintiff,** | : | **Case No. 2:25-cv-1128** |
| **v.** | : | **Judge Algenon L. Marbley** |
| **BOYD GENTRY, et al.,** | : | **Magistrate Judge Chelsey M. Vascura** |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before this Court on the following motions: the Motion to Dismiss filed by Defendants Anthony J. Huspaska, David Hoff, Stenger & Stenger, P.C., Absolute Resolutions Investments, LLC, Audrey Anne Fermanich, and Tiasha Broback (ECF No. 31); the Motion to Dismiss filed by Defendants Boyd Williams Gentry and the Law Office of Boyd W. Gentry, LLC, (ECF No. 33); and Plaintiff Keana Bautista's Motion to Strike. (ECF No. 39).

For the reasons set forth below, this Court **GRANTS** Defendants' Motions to Dismiss (ECF Nos. 31, 33) and **GRANTS in part and DENIES in part** Plaintiff's Motion to Strike. (ECF No. 39). Bautista's federal claim is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction and her state law claims are **DISMISSED WITHOUT PREJUDICE** for lack of supplemental jurisdiction.

## I. BACKGROUND

### A. The State Court Collection Action

On April 17, 2024, Absolute Resolutions Investments, LLC ("ARI") sued Keana Bautista in the Franklin County Municipal Court to collect on a charged-off consumer credit card account. ARI was represented in that suit by its outside collection counsel, Stenger & Stenger, P.C.

("Stenger"), including attorney Anthony J. Huspaska. (ECF No. 1 ¶¶ 73–74; ECF No. 32, Newman Decl. ¶ 2 & Ex. A). On reply, Bautista asserted counterclaims against ARI under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Ohio Consumer Sales Practices Act, and Ohio common law. The case was then transferred to the Franklin County Court of Common Pleas, where it is captioned *Absolute Resolutions Investments, LLC v. Bautista*, No. 24 CV 009713 (the "state court action"). (ECF Nos. 32-1, 32-3).

On August 11, 2025, ARI moved for summary judgment in the state court action on its own claim and on Bautista's counterclaims, and Bautista cross-moved for summary judgment the same day. (ECF No. 1 ¶¶ 74–75; ECF Nos. 32-5, 32-6).

### B. The August and September Affidavits

The allegations in this case center on two affidavits that were filed in the state court action. In the state court action, ARI supported its summary judgment motion with a "Plaintiff's Affidavit" signed by Tiasha Broback, an ARI authorized representative, certified under penalty of perjury and hand-dated for August 11, 2025 (the "Broback Affidavit 1"). The Broback Affidavit 1 bore no jurat and no notarial stamp. (ECF No. 1 ¶¶ 75–77).

Approximately one month later, on September 8, 2025, Gentry and Huspaska signed a Notice of Filing Affidavit of Tiasha Broback and attached a second Broback affidavit (the "Broback Affidavit 2") which was identical in substance to the Broback Affidavit. Unlike the Broback Affidavit 1, however, the Broback Affidavit 2 noted that it was "[s]ubscribed and sworn before" Audrey Anne Fermanich on "9/8/2025" and carried Fermanich's notarial stamp. (*Id.* ¶¶ 78–81).

In the action *sub judice*, Bautista alleges that the two signature blocks, when overlaid, register perfectly, in that every stroke of the pen, the placement of the signature above the signature

line, and the placement of the date line are identical. Bautista further alleges that remnants of the forward slash marks from the August date appear in the same position in the September image and that the handwritten "9/8/2025" obscures part of the underlining beneath it. (*Id.* ¶¶ 83–87). Because of this, Bautista alleges that the Broback Affidavit 2 was "a cut-and-paste forgery" and that the signature it bears was executed on August 11, 2025. (*Id.* ¶ 88). In light of this, Bautista asked Gentry and Huspaska to withdraw the Broback Affidavit 2 but they declined. Additionally, Bautista alleges that on September 23, 2025, Gentry and David Hoff filed documents in the state court action that, according to Bautista's Complaint, admitted that the date on the Broback Affidavit 2 had been altered and that Broback had not signed the affidavit in Fermanich's presence. (*Id.* ¶¶ 90–92). The current action ensued.

### C. This Action

Bautista filed this action on September 30, 2025, naming eight defendants: ARI; Broback, the affiant; Fermanich, the notary; Huspaska and Hoff, the Stenger attorneys; Stenger; Gentry; and GentryLaw. (ECF No. 1). The Complaint pleads five counts: violations of the FDCPA, 15 U.S.C. §§ 1692d, 1692e, and 1692f; negligence per se; civil conspiracy; negligence; and punitive damages. It invokes federal question jurisdiction over the first count and supplemental jurisdiction over the remaining four. (*Id.* ¶¶ 25–27, 94–202).

Bautista further alleges five injuries. Specifically, Bautista alleges that: (1) each Defendant "has caused a tortious injury by an act or omission in this state" (*id.* ¶ 31); (2) she "suffered a substantive harm by being the target of debt-collection abuses (such as the crafting, filing, and maintaining of a forgery in connection with a debt-collection action in the Franklin Case)" (*id.* ¶ 97); (3) she "has suffered injury, including unnecessary expenditure of resources and money to address the forgery filed in the Franklin Case and, also, to address Defendants' refusal to withdraw

the forgery in the Franklin Case" (*id.* ¶ 183); (4) Defendants' conduct "has caused injury to Bautista" (*id.* ¶¶ 184, 190, 196–97); and (5) "the forgery remains in the record in the Franklin Case," which it labels an "ongoing injury" (*id.* ¶ 191).

### D. Procedural Background

On December 19, 2025, ARI, Stenger, Huspaska, Hoff, Fermanich, and Broback (the "ARI Defendants") moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, to stay this action under *Colorado River* abstention. Gentry and GentryLaw (the "Gentry Defendants") filed a similar motion the same day. (ECF Nos. 31, 33). In both motions, the Defendants argue that Bautista lacks jurisdiction for her claims. (ECF Nos. 31, 33).

Bautista filed a combined opposition on December 29, 2025, and the ARI Defendants replied on January 12, 2026. The Gentry Defendants replied on January 13, 2026, attaching a supplemental affidavit from Fermanich and photographs said to depict the notarization. (ECF Nos. 35, 36, 37, 38, 38-1). On January 19, 2026, Bautista moved to strike the two reply memoranda and the second declaration. (ECF No. 39). The ARI Defendants opposed that motion on January 29, 2026. (ECF No. 42). The pending Motions are now ripe for this Court's review.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for such a challenge depends on whether it is "a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack on complaint's alleged subject matter jurisdiction "questions merely the sufficiency of the pleading." *Id.* As with a Rule 12(b)(6) motion to dismiss, courts assume the complaint's

allegations are true for the purposes of the motion. *Id.*; *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664, 667 (S.D. Ohio 2019).

By contrast, when a factual attack is levied against a complaint's alleged subject matter jurisdiction, courts have "broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject-matter jurisdiction exists," *Adkisson v. Jacobs Engineering Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015), and ultimately "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek*, 491 F.3d at 330. The plaintiff bears the burden of proving jurisdiction to survive a Rule 12(b)(1) motion.

Whether a plaintiff has standing is a question of subject matter jurisdiction properly raised under Rule 12(b)(1), and the plaintiff bears the burden of establishing it. *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017); *Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014). A complaint invoking federal jurisdiction "must contain non-conclusory facts which, if true, establish that the district court ha[s] jurisdiction over the dispute." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012); *accord Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543–44 (6th Cir. 2021).

**B. Motions to Strike**

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," and motions of that kind "are viewed with disfavor and are not frequently granted." Fed. R. Civ. P. 12(f); *Operating Eng'rs Local 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citation omitted). A motion of any kind must "state with particularity the grounds for seeking the order" and "state the relief sought." Fed. R. Civ. P. 7(b)(1)(B)–(C).

## III. LAW & ANALYSIS

Defendants advance two arguments, contending first that Bautista has not pleaded a concrete injury traceable to their conduct and therefore lacks standing under Article III. Next, they contend in the alternative that this Court should stay these proceedings under *Colorado River* abstention in deference to the state court action. (ECF Nos. 31 at 7–16; 33 at 4–11). Bautista separately moves to strike the filings that closed the briefing on those motions. This Court takes up that motion first because it determines the record on which the jurisdictional question is decided. (ECF No. 39).

### A. Bautista's Motion to Strike (ECF No. 39)

Bautista asks this Court to strike three filings: (1) the ARI Defendants' reply memorandum (ECF No. 36); (2) the Second Declaration of Patrick D. Newman (ECF No. 37); and (3) the Gentry Defendants' reply memorandum with its exhibit (ECF Nos. 38, 38-1). Bautista seeks to strike these documents on the grounds that the declaration is irrelevant to a facial attack and that it lacks a foundation of personal knowledge, that the replies impermissibly raise new matter, and that the Gentry Defendants' reply was filed out of time. (ECF No. 39). In the alternative, she asks this Court to convert the motions into ones for summary judgment under Rule 12(d) and to permit her to depose opposing counsel and the notary. (*Id.*). For the reasons below, Bautista's Motion to Strike fails.

#### *1. Bautista identifies no rule authorizing the relief she seeks.*

A motion must state the grounds for the order it requests, Fed. R. Civ. P. 7(b)(1)(B), and Bautista's memorandum cites Federal Rule of Evidence 602, Federal Rule of Civil Procedure 6(b)(1), Federal Rule of Civil Procedure 12(d), and three decisions addressing the scope of reply briefs. (ECF No. 39). Rule 602 governs the admissibility of testimony from a witness without

personal knowledge, Rule 6(b)(1) governs extensions of time, and Rule 12(d) governs conversion of a motion into one for summary judgment. None of the three authorizes a court to strike a filing. The authorities Bautista cites hold that a court need not entertain an argument raised for the first time in a reply brief, and none of them holds that the appropriate remedy is an order striking the brief. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003).

A movant who names no rule leaves the court to select one, supply its standard, and apply it to facts the movant has not marshaled, which is the movant's work rather than the court's. The Sixth Circuit has said as much: "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citations omitted); *accord In re Meridia Prods. Liab. Litig.*, 447 F.3d 861, 868 (6th Cir. 2006). Denial on this ground alone would be appropriate.

*2. Rule 12(f) does not reach a memorandum or a declaration.*

Even had Bautista invoked it, Rule 12(f) would not revive Bautista's request because the Rule authorizes a court to strike matters from "a pleading." Rule 7(a) defines the pleadings exhaustively, to include a complaint; an answer to a complaint; an answer to a counterclaim designated as a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third-party complaint; and, if the court orders one, a reply to an answer. Fed. R. Civ. P. 7(a), 12(f). Rule 7(b) separately provides for motions and other papers, which confirms that the drafters distinguished the two categories, and neither a memorandum of law nor a declaration of counsel falls within the first. Therefore, Rule 12(f) similarly supplies no basis to strike a reply brief or a supporting declaration. *See Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006).

*3. Rule 12(d) does not apply, and no conversion is required.*

Bautista's alternative request rests on Rule 12(d), which provides that if, "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). By its terms the Rule reaches motions under Rule 12(b)(6) and Rule 12(c), but it does not reach a motion under Rule 12(b)(1). This is a deliberate omission as a court resolving a factual attack on subject matter jurisdiction may consider affidavits, documents, and even live testimony, and may resolve disputed jurisdictional facts, without converting the motion; jurisdiction is a threshold question decided apart from the merits. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Rule 12(d) has no work to do on a Rule 12(b)(1) motion.

Regardless, this Court has confined its jurisdictional analysis to the allegations of the Complaint without relying on the Newman declarations (ECF Nos. 32, 37), the orders entered in other collection actions attached to them, or on the Fermanich affidavit and photographs (ECF No. 38-1). The state court filings are noted for the fact that they were made and for what they say, which is the limit of judicial notice, and not for the truth of the assertions therein. Because none of the challenged material bears on the disposition, there is nothing to convert, and the request to depose opposing counsel and the notary is **DENIED AS MOOT.**

*4. The replies do not warrant a remedy.*

A reply brief may answer the opposition but may not raise arguments for the first time, and the rule is one of discretion whose ordinary remedy is that the court declines to consider the new matter. *Scottsdale*, 513 F.3d at 553; *Seay*, 339 F.3d at 481. Bautista identifies no argument that satisfies the rule, because the self-inflicted-injury theory and the litigation-conduct theme both

appear in the opening motion, and the replies develop them in answer to points she raised in opposition. (ECF No. 31 at 11–12 & n.3).

*5. The untimely reply is stricken.*

The Gentry Defendants filed their reply one day after the period allowed by Local Rule 7.2(a)(2) expired, and they neither sought an extension beforehand nor addressed excusable neglect afterward. *See* Fed. R. Civ. P. 6(b)(1). This Court does not condone the omission, and counsel's cavalier treatment of his tardiness will not be countenanced. This Court therefore strikes the Gentry Defendants' reply (ECF No. 38).

Plaintiff's Motion to Strike (ECF No. 39) is **GRANTED** as to the Gentry Defendants' reply.

### B. Article III Standing

*1. The governing framework*

Article III confines the judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2. Standing gives that limitation content. It is the doctrine that separates a dispute a federal court may resolve from a grievance it may not, it is antecedent to every other question in the case. The "irreducible constitutional minimum" of standing has three elements: (1) an injury in fact, meaning an invasion of a legally protected interest that is concrete and particularized and actual or imminent; (2) a causal connection between that injury and the conduct complained of; and (3) a likelihood that a favorable decision will redress it. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). To be particularized the injury must "affect the plaintiff in a personal and individual way," and a plaintiff must assert her own legal interests rather than those of the public or of an institution. *Id.* at 560 n.1; *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Three features of the doctrine govern this case.

The first element concerns what makes an injury concrete, and the starting point is that a statutory cause of action does not answer the constitutional question. Article III standing requires a concrete injury "even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). The Supreme Court stated the principle plainly in *TransUnion LLC v. Ramirez*:

> Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court. 594 U.S. 413, 427 (2021).

The Supreme Court identified the harms that qualify, holding that traditional tangible harms, physical and monetary, are concrete. Certain intangible harms are concrete as well, including reputational harm, disclosure of private information, and intrusion upon seclusion, because each bears "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 424–25 (citation omitted). The inquiry asks whether the alleged harm has a close historical or common-law analogue, not whether the statute forbids the conduct. *Id.*

The second element concerns a risk of harm that has not come to pass, and in a suit for damages "the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *Id.* at 436–37. The risk must either materialize or itself cause a separate concrete harm such as emotional distress. That limitation matters here because Bautista seeks damages and no injunction. (ECF No. 1).

The third element concerns what a plaintiff must plead. Each element of standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the pleading stage general factual allegations of injury may suffice because a court presumes that general allegations embrace the specific facts necessary to support the claim. *Id.* The allegations must still be allegations of fact, and a complaint invoking

federal jurisdiction "must contain non-conclusory facts which, if true, establish that the district court ha[s] jurisdiction." *Carrier Corp.*, 673 F.3d at 440. Standing is also assessed claim by claim, defendant by defendant, and remedy by remedy, and it "is not dispensed in gross." *TransUnion*, 594 U.S. at 431; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted).

*2. Bautista's theories of injury*

The Complaint offers four theories of injury. First, the Complaint alleges as to each Defendant that he, she, or it "has caused a tortious injury by an act or omission in this state," and it alleges that Defendants' conduct "has caused injury to Bautista." (ECF No. 1 ¶¶ 31, 35, 38, 43, 47, 51, 55, 60, 184, 190, 196–97). Those are legal conclusions. They assert the existence of injury without describing one, and the first set appears in the personal jurisdiction section of the Complaint, where it tracks the language of Ohio's long-arm statute, which suggests it was drafted for a different purpose. A pleading is accepted as true on a facial attack, but a label is not a fact. *Iqbal*, 556 U.S. at 678; *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at 543–44.

Second, the Complaint alleges that Bautista "has suffered a substantive harm by being the target of debt-collection abuses (such as the crafting, filing, and maintaining of a forgery in connection with a debt-collection action in the Franklin Case)." (ECF No. 1 ¶ 97). The harm this allegation identifies is the crafting, filing, and maintaining of the affidavit, which is the conduct the FDCPA is said to forbid, so that the allegation restates the violation rather than describing a consequence of it, and under *TransUnion* it pleads an injury in law. 594 U.S. at 427. The paragraph that follows confirms the structure, because it reasons that "[c]onsequently, Bautista has standing to bring this action under the FDCPA," drawing standing as a conclusion from the violation itself. (ECF No. 1 ¶ 98).

Bautista's better framing of this theory is that being made the target of a forged and falsely notarized affidavit bears a close relationship to a harm traditionally recognized at common law, and two analogues are available. *TransUnion*, 594 U.S. at 424–25. Notably, however, neither fits what Plaintiff has pleaded. While the nearest analogue to a harm traditionally recognized by the Common Law is fraud, the deceit torts require a misrepresentation, justifiable reliance on it, and resulting pecuniary loss. The Complaint alleges the opposite of reliance, because it alleges that Bautista detected the alteration, that she compared the two signature blocks and found them identical, that she identified the remnants of the earlier date, that she demanded withdrawal of the affidavit, and that she told the state court the document was a forgery. (ECF No. 1 ¶¶ 83–91). A plaintiff who was not deceived has not suffered the harm the deceit torts were built to address.[1]

The second analogue is abuse of process. Abuse of process occurs when a party uses process to accomplish something the process was not designed to accomplish, which requires resulting damage. The process used here was a motion for summary judgment supported by an affidavit, which is the use for which the process exists, and Bautista's quarrel is with the affidavit's date and jurat rather than with the purpose for which the motion was filed.

Bautista's own authorities reveal the deficiencies in her pleadings. She relies on decisions of the Supreme Court of Ohio describing a false jurat as a fraud on the court and on all who rely on the document. (ECF No. 35 at 2–4). These cases are attorney and notary discipline cases where the concern was the integrity of the tribunal and of the notarial office. A wrong done to the

[1] While Bautista's Complaint presents a jurisdictional question that is intertwined with an element of the claim, this Court must find that "…jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's claim." *Gentek, 491 F.3d at 330.* Whether the Broback Affidavit 2 was forged is an element of every count Bautista pleads. That question is not before this Court and this Court does not decide it, because the standing defect identified below is of a different kind, and it exists even if every factual allegation about the affidavit is true.

administration of justice is a public wrong, and a plaintiff, such as Bautista, does not acquire standing by alleging one. *Warth*, 422 U.S. at 499; *Lujan*, 504 U.S. at 560 n.1.

Third, the Complaint alleges that "the forgery remains in the record in the Franklin Case," which it labels an "ongoing injury." Bautista restates the theory in briefing as "the real and concrete prospect of an adverse judgment based on substantively forged documents." (ECF No. 1 ¶ 191; ECF No. 35 at 1). A prospect is a risk, and in a damages action, a risk of future harm does not by itself constitute a concrete injury. *TransUnion*, 594 U.S. at 436–37. The Complaint does not allege that the state court credited the Broback Affidavit 2, that it granted ARI summary judgment, or that any ruling has issued. It pleads no separate harm flowing from the exposure, such as emotional distress; therefore, the risk remains a risk.

Fourth, and most substantially, the Complaint alleges "unnecessary expenditure of resources and money to address the forgery filed in the Franklin Case and, also, to address Defendants' refusal to withdraw the forgery in the Franklin Case." (ECF No. 1 ¶ 183). Monetary harm is the paradigm of concrete injury, and had Bautista pleaded an out-of-pocket loss, this would be a different case. *TransUnion*, 594 U.S. at 425.

The Complaint does not say, however, what resources were spent, what the money was spent on, when it was spent, how much it was, or that Bautista herself paid anything rather than her counsel's costs. Nor does it allege that she read the Broback Affidavit 2, that she was misled by it, that she was required to respond to it, or that she altered her position in the state court action because of it. Bautista merely states a conclusion without any substantive demonstration of materialized injury.

Bautista asserts that an injury has materialized without pleading a single fact that shows one, and three features of the complaint expose that gap. First, this Complaint pleads with precision

when it chooses to, describing the registration of two signatures at the level of the pixel, the position of slash marks remaining from an earlier date, and the portion of an underline obscured by a handwritten entry. (ECF No. 1 ¶¶ 83–88). A pleader who supplies that detail about the violation, and none at all about the harm attached, has made a choice. Second, paragraph 183 sits inside Count II, the negligence per se count, under the heading "DAMAGES," which indicates that it was drafted as a damages allegation, while the Complaint's jurisdictional allegation is the conclusory paragraph 98. Third, when responding to the argument that she had alleged no injury, Bautista wrote that the expenditure language "clearly refers to the injury that Bautista herself suffered."

What, then, is Bautista's injury? Nothing in the record before this Court answers that question: the Complaint alleges no lost money, no misuse of information, no denied opportunity, and no other harm that has *actually* happened.[2] It offers only the word "injury" and asks this Court to supply the rest. Article III does not allow this Court to establish an injury on the plaintiff's behalf. Therefore, this Court finds that Bautista has failed to plead a sufficiently particularized injury.

*3. The Sixth Circuit's FDCPA standing cases*

*Lyshe* reaffirms this Court's findings. 854 F.3d 855. There, a collection firm sued a consumer in Ohio state court, served discovery that did not include an electronic copy of the requests, and advised the consumer that requests for admission would be deemed admitted unless answered under oath and before a notary. The consumer then sued under the FDCPA, alleging that those departures from the Ohio Rules of Civil Procedure violated the Act. 854 F.3d at 856–58. Ultimately, the Sixth Circuit affirmed dismissal for lack of standing, reasoning that the consumer

[2] Italics added for emphasis.

"failed to allege that he was misled, that he felt compelled to make a sworn verification or engage a notary, or that he even responded to the challenged requests." *Id.* at 857. According to the Court, all that remained was "the mere prospect of a slightly less convenient discovery process," which "is not the type of abusive debt collection practice the FDCPA was designed to prevent; therefore it is not a concrete harm." *Id.* at 862. The Sixth Circuit additionally reiterated that "a statutory violation in and of itself is insufficient to establish standing." *Id.* at 859. Similarly to the plaintiff in *Lyshe*, Bautista identifies no consequence of the violation she alleges.

*Lyshe* does not stand alone. In *Buchholz v. Meyer Njus Tanick, PA*, the Sixth Circuit held that a consumer's anxiety on receiving collection letters was not a concrete injury, and the Court added that an injury a plaintiff inflicts on himself in response to a fear of future harm fails traceability as well. 946 F.3d 855, 861–66 (6th Cir. 2020). In *Garland v. Orlans, PC*, the Sixth Circuit held that confusion and fear on receiving a foreclosure letter were not concrete. 999 F.3d 432, 437–38 (6th Cir. 2021). And finally, in *Ward v. National Patient Account Services Solutions, Inc.*, the Sixth Circuit held that a failure to disclose a caller's true and complete name when leaving a voicemail produced no concrete harm, and it explained that the injury-in-fact requirement contains two sub-elements, particularization and concreteness, each of which must be satisfied independently. 9 F.4th 357, 361–63 (6th Cir. 2021).

Like Bautista, the plaintiffs in these cases each identified a statutory violation but did not sufficiently allege a particularized harm.

#### 4. *Bautista's Authorities*

Finally, Bautista relies principally on two decisions, and each is distinguishable. First, she cites *Macy v. GC Services Ltd. Partnership*, where the Sixth Circuit held that consumers had standing to challenge collection letters that failed to state that a dispute or a verification request

must be made in writing. 897 F.3d 747, 761 (6th Cir. 2018). The concreteness there came from a deprivation. The consumers were denied information the FDCPA entitled them to receive, and without it they risked forfeiting the verification rights that 15 U.S.C. § 1692g(b) confers by disputing the debt orally. *Id.* at 756–61. To the contrary, Bautista was deprived of no information, having received the affidavit, examined it, concluded within days that it was altered, and said so to the state court and to opposing counsel. (ECF No. 1 ¶¶ 83–91). *Macy* also rested on a material risk of harm to the interests Congress protected. The Supreme Court has since held that in a suit for damages the mere risk of future harm is not itself a concrete harm. *TransUnion*, 594 U.S. at 436–37.

Second, she cites *Newman v. Encore Capital Group, Inc.*, 2017 WL 3479510 (E.D. Mich. Aug. 14, 2017), for the proposition that filing a falsely notarized affidavit inflicts a concrete injury. (ECF No. 35 at 5). *Newman* is a district court decision from another district, and therefore, its is not binding. Its reasoning also turned on a feature this case lacks, because the *Newman* court held that the falsely notarized affidavits "shifted to [the plaintiffs] a burden of production that they could not carry." Michigan's affidavit statute makes a creditor's sworn account statement prima facie evidence unless the debtor files a counter-affidavit. Mich. Comp. Laws § 600.2145. The affidavit in *Newman* changed the plaintiffs' legal position based on state statute, whereas Bautista identifies no comparable Ohio provision. The Complaint does not allege that the Broback Affidavit 2 shifted any burden onto her or that she was unable to meet one. *Newman* also predates *TransUnion* by four years, and it was decided under the *Spokeo* standard that the Supreme Court has since narrowed.

*6. Traceability and redressability*

The remaining elements need not be reached at length because an unidentified injury cannot be traced or redressed, but two points bear stating. First, standing must exist as to each Defendant. *TransUnion*, 594 U.S. at 431; *Cuno*, 547 U.S. at 352. The Complaint does not allege that Gentry or GentryLaw altered the date, executed the affidavit, or notarized it. It alleges instead that Gentry co-signed the filings that transmitted the affidavit and that he declined to withdraw it after Bautista objected. (ECF No. 1 ¶¶ 74–75, 78, 90–92, 171–73). Whether that conduct could support liability is a merits question this Court does not reach, and for present purposes it is enough that, with no expenditure identified, there is no injury to trace to any Defendant.

Second, Defendants argue that any expense Bautista incurred was self-inflicted and therefore untraceable, and that argument, as developed, rests on orders entered in unrelated collection actions that this Court has declined to consider. (ECF No. 31 at 11–12). The narrower principle that Defendants invoke is sound, because a plaintiff "cannot manufacture standing merely by inflicting harm on [herself] based on [her] fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *see Buchholz*, 946 F.3d at 866. This Court does not rest on it, because the defect is simpler and it is anterior: no expenditure has been identified, so there is nothing whose cause needs to be assigned.

Redressability fails for the same reason. Bautista seeks actual and statutory damages under 15 U.S.C. § 1692k. (ECF No. 1, Prayer for Relief ¶¶ (h) – (i)). A statutory damages award does not supply the concrete injury Article III requires, which is the holding of *TransUnion*. (ECF No. 1, Prayer for Relief ¶¶ (h)–(i)); 594 U.S. at 426–27. Damages redress an injury; they do not create one.

Bautista bears the burden of establishing this Court's jurisdiction, and on this Complaint she has failed to do so. Count I is dismissed for lack of subject matter jurisdiction, and because the dismissal is jurisdictional it is without prejudice. *Lyshe*, 854 F.3d at 857; *see Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005) (en banc).

## IV. CONCLUSION

Bautista has alleged conduct that, if it occurred, a state court is well positioned to address, and she has placed that conduct before the state court in a pending motion. What she has not done is allege a concrete injury to herself, which is what opens the door to a federal forum. Article III asks for the injury, not the infraction.

For the reasons set forth above, this Court **GRANTS** Defendants' Motions to Dismiss (ECF Nos. 31, 33)[3] and **GRANTS in part and DENIES in part** Plaintiff's Motion to Strike (ECF No. 39). Count I is **DISMISSED WITHOUT PREJUDICE** for lack of Article III standing, Counts II through V are **DISMISSED WITHOUT PREJUDICE** for lack of supplemental jurisdiction, and Defendants' alternative requests for a stay are **DENIED AS MOOT**. The Clerk is **DIRECTED** to terminate this case.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 28, 2026**

[3] This Court does not reach the parties' *Colorado River* Abstention arguments given Bautista lacks standing.